# HANG & ASSOCIATES, PLLC

ATTORNEYS AT LAW
136-20 38th Avenue, Ste. 10G
Flushing, New York 11354

Jian Hang
Keli Liu
+1 (718) 353-8588 (t)
+1 (718)353-6288 (f)
jhang@hanglaw.com
Kliu@hanglaw.com

October 31, 2018

Hon. Gabriel W. Gorenstein
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312
Via ECF

Re:     *Zhang et al v. Ling Skincare Ltd. et al*, 18-cv-01697-GHW

Dear Hon. Gabriel W. Gorenstein,

    This firm represents the Defendants Ling Chan, Ling LTD and Ling at West Side Inc. (the "Defendants" or "Ling" ) in the above-entitled action ( the "Federal Matter"). We write, jointly with the Plaintiffs Wenye Zhang, Li Ping Chan and Angela Ho (the "Plaintiffs") (all, together where appropriate, as "the Parties"), to explain the terms of the Parties' settlement with respect to Plaintiffs' FLSA claims, and to seek approval of their settlement of those claims in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).[1]. A copy of the signed settlement agreement is annexed herein as **Exhibit A**.

    During the course of this litigation, Defendants also brought two separate related state court actions against Plaintiffs for violations of the Computer Fraud and Abuse Act, unfair competition, misappropriation of trade secrets, and breach of duty of loyalty arising out of Plaintiffs' employment with Defendants. The two state court matters are: *Ling Ltd. d.b.a Ling Skincare v. Li Ping a.k.a Carol Chan et al* (the "State Chan Matter") and *Ling at West Side v. Zhang et al* (the "State Zhang Matter").

---

[1] While Plaintiffs also bring claims in this case for Defendants' alleged violations of the New York Labor Law ("NYLL"), settlement of those claims does not require court approval for dismissal. *See, e.g., Yunda v. SAFI-G, Inc.*, 2017 WL 1608898, at *1 (S.D.N.Y. Apr. 28, 2017) (citing *Abrar v. 7-Eleven, Inc.*, 2016 WL 1465360, at 81 (E.D.N.Y. Apr. 14, 2016) (". . . the NYLL settlement agreement does not require judicial approval.").

1

In order to avoid potentially significant and unanticipated burdens and expenses in establishing their respective positions in both the Federal Matter and the state actions, as part of the settlement agreement in the instant matter, the parties have agreed that the Plaintiffs will dismiss the Federal matter and the Defendants will dismiss the two state actions. The Parties do not concede liability or any other aspect of the allegations against them, and each party denies all substantive allegations in their entirety

## I.   BACKGROUND

### a.   *The facts as set forth by Plaintiffs in the Federal Matter*

<u>Employment duration</u>

Plaintiffs Wenye Zhang ("Zhang"), Li Ping Chan ("Chan") and Angela Ho ("Ho") allege that they worked as Aesthecians at Ling skincare spas[2] in Manhattan. Zhang alleges she worked at the Ling Upper Westside location from in or about October 2002 to in or about January 2015. Chan and Ho both worked at Ling's spa in Union Square with Chan allegedly worked from in or about November, 2001 to in or about August, 2017, and Ho from in or about September, 2001 to in or about August, 2017.

<u>Days/Hours Worked</u>

All three Plaintiffs allegedly worked five days a week with regular occurrence of work in excess of 40 hours a week. Specifically, Zhang and Chan each claims that they worked 45-50 hours per week while Ho alleged slightly less number of hours: from 41 to 45 hours per week. Plaintiffs allege that they were not paid for all the hours they actually worked including unpaid off-the-clock hours and compensable break time.

<u>Compensation Received</u>

Plaintiffs each received a base pay calculated at an hourly rate that was at all time at least the minimum wage. To the extent that they received overtime compensation, Plaintiffs claim that they were not calculated at the proper hourly rate. Plaintiffs also received commission based on the gross sales (services and/or products) they help generated. In addition to the base pay and commission, Plaintiffs received tips from the customers by cash or via credit card. For tips paid by credit card. Plaintiffs allege that 3% of the credit card paid tip was improperly deducted.

Based on the alleged facts above, Plaintiffs contend that Defendants failed to incorporate their commission into their regular rate of pay and therefore did not properly compensate them for the hours they worked over 40. Plaintiffs further allege the nonpayment of spread-of-hours premium and improper deduction of tips.

### b.   *The facts as set forth by Defendants in the Federal Matter*

---

[2] It should be noted, the corporate entity sued in the Federal Matter is not the correct corporate entity behind either of the subject Ling Spas. The corporate entity for both the upper west spa and the one in Union Square was identified in the state actions.

Ling's Record Keeping Practice; Plaintiffs' Employment Period; Hours Worked and Pay Received

Ling alleges that it maintains accurate time and pay records for all of its employees, including the Plaintiffs. Specifically, Ling used third party online system(s) to track the hours its employees worked. Each plaintiff was assigned an employee log-in to the online system, through which they were required to track their hours worked and manage customer appointments. The online platforms Ling used throughout the relevant years are industry recognized professional spa services. Ling's employees, including the Plaintiffs, had access to their own time records at all times during their employment. They were also provided a copy of their time records for each pay period..

All three Plaintiffs were Ling's long-term employees, each had worked for Ling proximately as many years as they alleged. Ling, however, alleges that Plaintiffs did not work as many hours as claimed and certainly did not work off the clock. Based on Ling's records, we have summarized the total number of overtime hours each Plaintiff worked during each of the relevant years:

| Year /OT Hrs | Wenye Zhang | Carol Chan | Angela Ho |
| --- | --- | --- | --- |
| 2012 | 117.81 | 181.87 | 0.00 |
| 2013 | 99.84 | 155.67 | 30.04 |
| 2014 | 111.13 | 225.27 | 180.48 |
| 2015 | 0 | 61.77 | 124.52 |
| 2016 | N/A | 23.92 | 33.98 |
| 2017 | N/A | 35.58 | 7.24 |
| Regular Rate | $8/hr(2012-2014); $9 (2015) | 2012-2017: $20/hr | $8/hr(2012-2014); $9 (2015, 16); $11(2017) |

If Defendants were to prevail on all of their defenses, the amount of damages owed to Plaintiffs would be zero dollars. Significantly, as preliminary disclosure, Defendants produced over five hundred pages of time and pay records, including, but not limited to, daily and weekly time records, pay stubs, commission and tip records, pay rate records, etc. As the records clearly show, the Plaintiffs were paid for all hours worked including the hours in excess of 40 at a rate of 1.5 times their respective regular rate of pay. As such, **if the case were to go to trial**, Defendants likely can and will prove that: (1) Plaintiffs' overtime claims are exaggerated, their off-the-clock claims non-existent and both will be refuted by Ling's daily and weekly time records; (2) Plaintiffs had no cognizable claims for illegal tip retention and/or deduction. Deduction of credit card tips of a percentage that was in fact charged by credit card company for tip liquidation purpose is a common and lawful practice; (3) Plaintiffs had written records of the tips them earned; and (4) Ling provided compliant wage statements to Plaintiffs.

## II. STANDARD OF REVIEW

Under the FLSA, parties cannot settle claims without the approval of a district court or the Department of Labor. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). The Court may approve the settlement where it finds the agreement is "fair and reasonable." *See Flores v. Food Express Rego Park, Inc.*, No. 15 CV 1410 (KAM), 2016 WL 386042, at *1 (E.D.N.Y. Feb. 1, 2016). As set forth herein, the Court should approve the instant settlement agreement as it is a fair and reasonable settlement that was the result of arms-length mediation with a neutral mediator, and constitutes a fair compromise of a bona fide dispute over the claims in this matter. *See Zhang v. Joy's Hair Studio, Inc.*, No. 13 CV 3220 (RRM) (RML) at * 1 (E.D.N.Y. June 21, 2016).

In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiffs range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).

## III. THE SETTLEMENT AGREEMENT SHOULD BE APPROVED AS ITS TERMS ARE FAIR AND REASONABLE GIVEN THE FACTS OF THIS CASE

**a.** Based on Plaintiffs' allegations, Defendants' liability would be as follows:

| Year | Wenye Zhang OT owed | Carol Chan OT owed | Angela Ho OT owed |
|---|---|---|---|
| 2012 | $8,519.38 | $12,233.86 | $1,194.33 |
| 2013 | $11,068.40 | $14,697.20 | $3,555.24 |
| 2014 | $10,716.98 | $17,085.72 | $8,596.91 |
| 2015 | N/A | $14,492.80 | $12,148.02 |
| 2016 | N/A | $16,217.60 | $9,937.44 |
| 2017 | N/A | $7,848.65 | $5,467.45 |

However, that would be if the fact finder determined that what was contained in the complaint is true. Defendants' position is that it is demonstrably untrue. In all actuality, Defendants believe they do not have any exposure.

**b. Assessment of the alleged damages relative to Defendants' State Actions.**

4

Defendants have, based on just preliminary investigation, purportedly lost over 200 of clients in total due to the Plaintiffs' misconduct. That lost alone resulted in estimate damage close to $2,000,000. Further discovery would likely reveal more damage, including lost profit, even lost profit running through the present. With the potential discouragement of compensation, the award of attorneys' fees and penalty. Plaintiffs' total exposure will almost certainly exceed their potential award in the Federal Matter. Plaintiffs vehemently deny any wrong doing, including that they unlawfully accessed Ling's computer systems and/or solicited Ling clients.

### c. The litigation risks faced by the parties

The parties recognize the risks and costs of continuing litigation in this matter, as well the separate state actions. On Plaintiffs' claims in the Federal Matter, Defendants face the risk of having to pay Plaintiffs' liquidated damages, costs, and attorneys' fees. On Defendants' state actions, Plaintiff faces the risk of having to pay treble damages, costs, and attorneys' fees. Settlement on the terms contained in the Settlement Agreement avoids further burdens and expenses for both sides, and it acknowledges the risks of continued litigation and the disputed nature of the Parties' claims and defenses.

### d. The settlement agreement is the product of arm's length bargaining

The settlement is fair and reasonable given that it was the result of arms-length mediation with a neutral mediator, and constitutes a fair compromise of a bona fide dispute over the claims in this matter. *See Zhang v. Joy's Hair Studio, Inc.*, No. 13 CV 3220 (RRM) (RML) at * 1 (E.D.N.Y. June 21, 2016).

### e. There is no possibility of fraud or collusion

Because the settlement was reached through arms-length mediation with a neutral mediator, there is no risk or possibility of fraud or collusion in settling this matter on the terms set forth in the Settlement Agreement.

### f. The "Non-Disclosure and Communications" provision should be approved

The parties respectfully submit that the "Non-Disclosure and Communications" provision of the Settlement Agreement is not unduly restrictive and should be approved by the Court. The confidentiality provision is very similar to the one approved by the Hon. Richard J. Sullivan in the matter *Lola v. Skadden, Arps, Meagher, Slate, and Flom LLP*, No. 13-CV-5008, 2016 U.S. Dist. LEXIS 12871, at *6-8 (S.D.N.Y. Feb. 3, 2016). Specifically, Judge Sullivan observed the following about the provision:

> Although the Court is mindful that, in certain cases, confidentiality provisions may excessively restrict plaintiffs' ability to discuss settlements and thus "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair," the Court finds that this concern is not present here. As discussed above with respect to general releases, the FLSA likewise imposes no per se bar on confidentiality provisions in settlements. Rather, the fairness of restrictions on the parties' ability to disclose details

5

>of a settlement depends on the particular circumstances of any given case.
>
>Here, . . . the "Non-Disclosure and Communications" provision does not unduly restrict Plaintiffs' ability to discuss the Settlement, which has been publicly docketed and is accessible to anyone interested in reading it. It merely states that Plaintiffs and Plaintiffs' counsel "will not contact the media or utilize any social media regarding this Settlement or its terms," and that, if contacted about the Settlement, Plaintiffs and their counsel shall respond "'no comment' or be limited solely to words to the following effect: `The matter has been resolved.'" Although this provision does place some limits on Plaintiffs' ability to discuss the settlement, the limit is not absolute. The provision mainly restricts Plaintiffs' contact with the media, not their general ability to discuss the Settlement. . . . Indeed, the Court is aware of no reason why a settling plaintiff should be allowed to accept less than the maximum potential recovery on the basis of litigation risk, but not be permitted to make non-monetary concessions, such as minor restrictions on his right to comment on the case, for the same reason. And since no one can force Plaintiffs to opine on the case in the future anyway, it is by no means irrational or improper for Plaintiffs to compromise words for dollars as part of a global, arms-length settlement. Once again, the Court concludes that this provision is the result of fair bargaining between well-represented parties and embodies a reasonable compromise that does not conflict with the FLSA's purpose of protecting against employer abuses.

*Lola*, 2016 U.S. Dist. LEXIS 12871, at *6-8. The Court also approved a similar provision in the matter *Almonte v. Marina Biscochos Dominicanos Corp.*, No. 16 CV 3983 (PKC) (LB). *See* Docket at Entry No. 26-1 and Minute Entry dated March 6, 2017.

### g.     The general release provision should be approved

When an FLSA case involves claims other than failure to pay minimum wages and overtime compensation, and the release is mutual, judges have found that the release does not render the settlement unfair. *See Bright v. Mental Health Res. Ctr., Inc.*, No. 3:10-cv-427-J-37TEM, 2012 WL 868804, at *5 (M.D. Fla. March 15, 2012) (approving settlement agreement as to one employee who signed a general release in exchange for the employer foregoing its counterclaims against her); *Bacorn v. Palmer Auto Body & Glass, LLC*, No. 6:11-cv-1683-Orl-28KRS, 2012 WL 6803586 (M.D. Fla. Dec. 19, 2012), report and recommendation adopted, 2013 WL 85066 (M.D. Fla. Jan. 8, 2013) (approving a settlement agreement in a case involving unpaid wage and retaliation claims where employee signed a general release in exchange for a mutual release from employer); *Alvarez v. BB Management of N.Y. Corp.*, No. 14 Civ. 3427 (KBF) at Docket Entry No. 20 (S.D.N.Y. July 23, 2014) (approving settlement agreement appearing

at Docket Entry No. 17-2 in a case where there were counterclaims asserted, and the settlement agreement contained mutual general releases).

In the case at bar, Defendants have two pending state actions against the Plaintiffs and are willing to enter into a mutual general release with the Plaintiffs.

## IV.   CONCLUSION

Given the foregoing, it is respectfully requested that the Court approve the settlement agreement annexed hereto as Exhibit A.

> Respectfully submitted,
>
> */s/ Keli Liu*
> Keli Liu., Esq.